STATE of Delaware

v.

Alan CEPHAS.

STATE of Delaware

v.

Patricia DILL.

STATE of Delaware

v.

John S. THOMPSON.

Superior Court of Delaware.

April 8, 1970.

Aubrey B. Lank, John G. Mulford, of Theisen & Lank, Wilmington, for Town of Elsmere.

Victor F. Battaglia, City Sol., Wilmington, for City of Wilmington.

Clyde M. England, of Killoran & Van Brunt, Wilmington, for City of Newark.

Samuel H. Lewis, of Barrett & Lewis, Wilmington, for Town of Newport.

Clarence W. Taylor, Wilmington, for New Castle County.

CHRISTIE and QUILLEN, Judges, sitting.

QUILLEN, Judge

The present cases come before the Court at this time on a petition by the Prothonotary of New Castle County for instructions concerning the proper disposition of certain fines which were imposed by the Court. All of the cases involved are motor vehicle offenses and the particular statute in issue is 21 Del.C. § 706(a). The antagonists are certain municipalities of New Castle County which claim the right to fines in cases such as those before the Court pursuant to 21 Del.C. § 706(a) and New Castle County which claims a right to such fines by the provisions of 9 Del.C. § 377, a section which provides that fines not otherwise appropriated shall belong to the County.

It should be specifically noted at the outset that none of the cases involved arrests which were procured by authorized

representatives of the State Highway Department and that the State has made no claim to the money at issue in these cases. See 21 Del.C. § 706(a). Nor were any of the arrests procured by the New Castle County police. All of the arrests in question were made by the police of the municipalities for traffic offenses occurring within the municipalities.

The same issue is involved in each case although the precise procedural history of the cases vary somewhat.

In the Cephas case, the fine was paid in connection with a new charge originally filed in the Superior Court, following an appeal of a related case from the Municipal Court for the City of Wilmington and the entry of a nolle prosequi in the case which had been appealed.

In the Dill case, the fine was paid in the Superior Court pursuant to a conviction on an appeal from the Alderman's Court in the Town of Newport and a trial de novo in Superior Court.

In three of the Thompson cases (Nos. 960, 961 and 962) the fine was paid in the Superior Court on a case transferred to the Superior Court from the Court of Common Pleas for New Castle County after having been previously removed to the Court of Common Pleas from Justice of the Peace Court No. 11. 11 Del.C. § 5301(c). In the fourth Thompson case, (No. 28) the fine was paid on a new information charging a lesser offense filed in the Superior Court after a related case was transferred from the Court of Common Pleas for New Castle County and was nolle prossed.

Thus, various factual situations exist which are common examples of traffic cases before the Court. We have:

1. A case involving a new information filed in the Superior Court, in lieu of a charge appealed from the Municipal Court for the City of Wilmington wherein a nolle prosequi was entered on the original charge.

2. A standard appeal from a town alderman's court with a trial de novo in the Superior Court.

3. A transfer case from the Court of Common Pleas for New Castle County, the case having been previously removed to the Court of Common Pleas from Justice of the Peace Court No. 11.

4. A new information filed in the Superior Court following a transfer of a case from the Court of Common Pleas for New Castle County, the transferred case being nolle prossed.

Having set forth the four situations which are herein involved, we merely note that the variances in the procedural background does not affect the disposition of any case.

Basically, the issue under 21 Del.C. § 706(a) is whether the municipalities are entitled to payment of the fines merely because the violation occurred within corporate limits of the municipality or whether the municipalities must not only be the place of the violation but also the place of collection.

The statute in pertinent part as it presently appears in our Code reads as follows:

"All fines and costs collected for the violation of any of the provisions of this title, in the limits of any incorporated city or town in this State, shall be paid to the incorporated city or town within which such offense was committed, for the use of the city or town."

It is the contention of the County that the phrase "in the limits of any incorporated city or town in this State" necessarily modifies the word "collected". The County says that the comma punctuation before and after the particular phrase grammatically refer it to the word "collected". Moreover, the County notes further that if the place of violation was intended to be the sole criterion, then the phrase quoted above is unnecessary since the phrase "within which such offense was committed" would

have been sufficient to accomplish the legislative intent.

Furthermore, the County argues that the inclusion of costs in the first sentence of 21 Del.C. § 706(a) supports its position that the judicial process was intended to be the determining factor as to the ultimate disposition of the money. According to this view, it would make no sense for the Superior Court to remit the costs of its operation to municipalities merely because the motor vehicle violation occurred within the corporate limits of the municipality.

The municipalities argue, on the other hand, that the public policy expressed in the statute is clear and unambiguous and that it was merely intended for the municipality to receive the financial benefit from motor vehicle offenses occurring within the corporate limits. If the language be considered ambiguous by the Court, the municipalities say that the overriding public policy, ascertained by reading the statute as a whole, should govern any interpretation. The municipalities also argue that it would be somewhat ridiculous to make the statute turn on where the money is collected since Wilmington, as the County seat, and location of the Office of the Prothonotary, would receive a benefit not extended to other municipalities which is contrary to any reasonable intention by the Legislature.

Unfortunately custom is not very helpful in resolving the legal dispute at issue. It appears that in New Castle County the successive Prothonotaries and the Court of Common Pleas have always forwarded fines in situations similar to those present in this case to the County. Indeed, it has been the practical equivalent to a rule of common law. To the contrary, however, it appears to have been the long standing practice in Kent and Sussex Counties for the Prothonotaries to forward fines in situations similar to those here involved to the municipalities.

Each interpretation has some difficulty. If the County's view is accepted, the unique situation of the City of Wilmington comes to the fore. If the view of the municipalities is accepted, the difficulty in construing the statute in relation to costs comes to the fore. There is also, of course, the difficult problem, not here directly involved, of the past practice of Prothonotaries in New Castle County if the municipalities are to prevail.

The Court must determine what the intention of the Legislature was insofar as the disposition of costs and fines in motor vehicle cases is concerned.

The statute in question was first enacted in 1917. 29 Del.Laws Ch. 21. In its original form, it read as follows:

"Section 1. That Chapter 6 of the Revised Code of the State of Delaware, be and the same is hereby amended by adding to 249, Section 212 thereof a new paragraph, as follows:

All fines and costs collected under the provisions of Sections 212 and 213 of this Chapter, for the violation of any of the provisions of Sections 196 to 217 inclusive, of this Chapter, in the limits of any incorporated city or town in this State, shall be paid to the incorporated city or town within which such offense was committed, for the use of said city or town."

Sections 212 and 213 of Article V of Chapter 6 of Title 3 of the 1915 Revised Code dealt with penalties for motor vehicle violations which were "to be collected by a summary conviction before any Mayor or Justice of the Peace or Judge of the Municipal Court of the City of Wilmington". 1915 Code § 249 (Section 212). The County argues that the reference in the 1917 Act to the statutory jurisdiction of Mayors, Justices of the Peace and the Wilmington Municipal Court demonstrates that the judicial process was intended to be the determinative factor on the instant question. The County further argues that language modifications in statutes and re-

visions since 1917 were not intended to change the original intent.

The Court will accept the significance the County places on the original statute. The intention of the 1917 Legislature should govern. But the Court disagrees with the conclusion drawn therefrom.

The difficulty with the County's argument is that language interpretation upon which it relies, the geographic location of the place of collection, is broader than the rationale making the determinative factor the governmental level of the judicial process. It would be one thing if the statute were limited to the municipal courts, aldermen, and mayors. But the statute also involved the State court system through the Justices of the Peace and the appellate process. When this fact is taken into consideration, the argument of the County is simply difficult to accept from either a legislative intent or a public policy point of view. Why should the disposition of fines depend upon whether the justice of the peace has his office, which in 1917 frequently was synonymous with his home, within the corporate boundaries of a municipality? Why should the disposition of fines on appeal depend on whether the appellate court sits within the corporate boundaries of the municipality involved? The answer is that it does not make sense and such a construction should be avoided if reasonably possible.

But the County argues that the punctuation in the statute compels support for its position. The fact that a comma was placed after the word "Chapter" the second time it was used in the 1917 Act is said to evidence an intention that the phrase "in the limits of any incorporated city or town in this State" should relate back to the word "collected".

The punctuation argument has historical acceptance in New Castle County. While no judicial opinion in a given case has been located, it appears certain, and evidently can be documented by at least one letter declaring administrative policy, that the Court of Common Pleas adopted the County's position on the basis of the punctuation.

It is true that, if the one comma had been omitted, the County's case would probably disappear. But the converse is not true. The inclusion of the comma does not conclusively establish the County's case. It seems just as likely that the original draftsmen of the section were merely trying to break a long sentence by isolating the phrase "of this Chapter". If so, the phrase "in the limits of any incorporated city or town in this State" could attach to the word "violation" just as easily as to the word "collected". Moreover, it is helpful to have the dual reference to the place of violation because otherwise it would appear that all violations of the State motor vehicle law would necessarily occur within a municipality.

Nor is the use of the word "collected" difficult to explain. It was not intended to introduce legal significance to the place of collection. It was merely used to relate back to the existing language in Section 202, "to be collected by a summary conviction", and thus tie the amendment to the existing statute. It simply stretches the imagination to say the Legislature intended by its use to say that justices of the peace with their offices in a municipality would dispose of fines one way and those without a municipality would dispose of fines another. This is especially true when one examines the hodge podge requirements for location of the justices of the peace in effect at the time. 1915 Code § 3949.

It should also be noted that there was no special provision made for the disposition of the fines and costs on appeal. 1915 Code § 251 (§ 214 of Title Three); 21 Del.C. § 708. But this appears natural. The purpose of appeals generally is not to establish a different disposition of fines collected but to test the correctness of the adjudication. It would naturally be assumed that the same disposition of the money would be made. It is the lower court under this statute, as

many others, which has to be satisfied by the surety provided.

■ Thus, we are not persuaded that the language used compels acceptance of the County's position. And, to the contrary, the Legislative policy was obviously designed to give municipalities the income arising out of traffic violations within corporate limits. If the Legislature wanted to limit this policy by the change of the location of the collecting court, it would have done so in specific terms. It is our view that the Legislature intended the municipalities to have the income arising from motor vehicle fines occurring within the corporate limits of the municipality, regardless of the Court or location of the Court collecting the money.

This view of 21 Del.C. § 706(a), as noted above, presents one significant problem, the apparent blanket inclusion of "costs" in the statute. In one sense, the inclusion enhances the County's position that the judicial process was intended to be the deciding factor. But even the County's position is difficult at least insofar as costs in the justices of the peace court is concerned. Was it intended that the mileage charges of the State constables would be paid to the municipalities? What about the County Sheriff's costs in appeal cases? In reality, the same problem exists in relation to costs whether the position of the County or that of the municipalities is accepted. The argument based on the inclusion of "costs" does not, in our view, override the clear policy of the statute.

We hold that the fine in every case before us should be paid to the municipality. It is so ordered.

■ We hold that the word "costs" as it appears in 21 Del.C. § 706(a) must of necessity refer only to those costs routinely incurred in the Municipal Court and Aldermen's Courts. In short, the statute was intended to preserve to the municipalities the income for costs incurred and imposed by the municipalities for the enforcement of the State motor vehicle law. To the extent that endorsed costs in the Superior Court include such costs, they should be paid to the municipality. Other costs should go routinely to those persons who in normal course are entitled to them.

In only one of the cases pending before us, the Dill case, were a portion of the costs incurred and imposed by a municipality. Such portion of the costs should be paid to the municipality. Other costs should be paid as in normal course. It is so ordered.